[No. 20886. *En Banc.* August 6, 1928.]

HOWARD HARTFORD, *Respondent*, v. NORTHWESTERN
STEVEDORING COMPANY, *Appellant*.[1]

[1] MASTER AND SERVANT (94, 98)—ASSUMPTION OF RISKS—SHIPPING
—KNOWLEDGE OF DANGER. A longshoreman assumes the risk of
injury in assisting to remove from a hatchway a strongback
weighing one thousand pounds, which was dropped upon, or
bounced upon, his foot, when a fellow-servant let it drop, where
he had long experience in the work, was watching the operation,
and stepped back until he knew or though he was in the clear,
knowing that it would bounce toward him if dropped; not-
withstanding the action was under the Federal Act, 41 Stat., at
L. 988, 1007, § 20, doing away with the fellow-servant rule in
the case of personal injuries to seamen; since no negligence
was shown (FRENCH, FULLERTON, and BEALS, JJ., dissenting).

Appeal from a judgment of the superior court for
King county, Griffiths, J., entered June 28, 1927, upon
the verdict of a jury rendered in favor of the plain-
tiff, in an action under the Federal act for personal
injuries sustained by a stevedore upon a vessel. Re-
versed.

*Poe, Falknor, Falknor & Emory,* for appellant.

*G. F. Vanderveer,* for respondent.

MITCHELL, J.—In this action, the plaintiff seeks a
common law remedy for personal injuries sustained
by him upon a vessel at dock, in the city of Seattle.
The action was brought under the provisions of the
Act of Congress of June 5, 1920, ch. 250, § 20, 41 Stat.
at L. 988, 1007; which, by making applicable the stat-
utes of the United States concerning the common-law
right or remedy in cases of personal injury to railway
employees, has done away with the fellow-servant rule
in the case of personal injuries to seamen, as construed

[1]Reported in 269 Pac. 831.

in *International Stevedoring Co. v. Haverty*, 272 U. S. 50; 71 Law Ed. 157.

The plaintiff and a fellow servant, Percy Norris, both experienced longshoremen, were engaged in removing a strongback from a hatchway of the vessel. Spreaders with hooks which fit into eyes of the strongback are employed to lift such beams; but in this case one of the hooks was bent, which made it necessary to make one end of the spreader fast by winding or "choking" it around the end of the strongback. Upon lifting the strongback in this manner from its sockets, it was landed on a portion of the hatch cover in such way that it rested upon, or fouled, the spreader around the end, so that it became necessary to raise that end of the strongback to clear and remove the spreader. Norris raised the end of the strongback about two feet, while the plaintiff removed and cleared the spreader. The beam weighed nearly a thousand pounds. Its top and sides were straight or flat, but the bottom of it was thicker or bulged in the center from the ends. After the spreader was removed, Norris dropped the strongback, it bounced towards the plaintiff, struck his left foot and caused the injury complained of.

The charge of negligence, as alleged in the complaint, was that, without warning, "Percy Norris negligently dropped said strongback" onto plaintiff's left foot. Or, stated another way and as argued here, it charged Percy Norris, a fellow employee, with negligence in two particulars: (1) Dropping the strongback on plaintiff's foot; and (2) in failing to warn the plaintiff. The instructions to the jury were to the same effect. The answer of the defendant was a general denial and a charge of assumption of risk. The verdict was for the plaintiff, after the denial of plaintiff's motion for a directed verdict. The defendant has appealed from a judgment on the verdict, after the denial of its mo-

tions for judgment notwithstanding the verdict and
for a new trial.

[1]  In the first place, as we view the testimony
most favorable to the respondent, consisting as it does
of his own testimony, no negligence on the part of
Norris was shown.  Respondent testified:

"Q. Had you entirely cleared the line from around
the strongback at the time it dropped?  A. Yes.  Q.
How close were you standing from the strongback at
the time it was dropped?  How close were you to it?
A. I had plenty of clearance.  Q. Well, now, that is a
relative term.  How close were you to it?  A. I should
say a foot and a half or two feet."

He further testified as follows:

"Q. How long prior to the time this strongback was
dropped had you finished taking the line from the
strongback.  A. I couldn't say as to the exact time;
just common ordinary working.  Q. Would you say it
was a minute or two?  A. No, I don't think it was a
minute or two.  Q. But you had already gotten the line
away from the strongback at the time it was dropped?
A. Yes, sir.  Q. And had you stepped back in after
you took the line from the strongback?  A. I think I
had in that position.  I realized that I was in the clear.
I think I stepped back with one of my feet, if I am not
mistaken.  I always do so from force of habit.  I am not
certain as to whether I moved entirely away where I
was standing.  I know I was in the clear.  Q. Well,
now, you realized that you were in the clear at that
time?  A. I thought I was.  Q. So you were about two
feet away from this strongback?  A. To my judg-
ment."

Both men were experienced, the respondent having
been engaged in this line of work for the last ten years
and testified that he had assisted in moving strong-
backs before.

"Q. You had moved or been present or assisted in
moving ends of strongbacks before, hadn't you, Mr.
Hartford?  A. Yes."

They were working at their task as experienced men ordinarily do. After the line was taken off the beam, respondent stepped back until he "had plenty of clearance," "realized he was in the clear," "knew he was in the clear," and the beam was dropped in "just common ordinary working" time. Surely, respondent with his continuous experience of recent years, knew what a reasonably prudent person should do under the circumstances and we find him exercising that knowledge actually engaged in taking care of himself by stepping back until he knew he was in the clear, charging the other fellow of experience with negligence in proceeding manifestly upon that same kind of theory and judgment. That is, his fellow employee must exercise a greater amount of care and foresight than a reasonably prudent experienced person would.

As to Norris not giving a warning that he intended dropping the end of the strongback, what need was there of it? He dropped it in just common ordinary working time. What purpose would have been served by giving the respondent a warning? His mind was upon the situation and, in his judgment, based upon experience, he realized and knew that he was in the clear. The necessity of a warning is to give another knowledge of danger or risk. When he has such knowledge, failure to give warning becomes immaterial. In order to show a duty to give warning, it must appear that the risk is not obvious or is not known to the one complaining. *Fortin v. Manville Co.*, 128 Fed. 642.

If the case be considered from the viewpoint that the strongback bounced upon respondent's foot, after the beam was dropped, as was the fact, instead of its being dropped on his foot, as was alleged in the complaint, the respondent is in no better position. In addition to his testimony already given, he testified, in answer to his own counsel's questions, as follows:

"Q. Now, dropping that thing first on that belly which way would it bounce, or do you know? A. It would bounce toward me. Q. It would bounce toward you? A. Every time."

And on cross-examination he said:

"Q. You knew that it would naturally bounce towards you if it fell? A. Absolutely. Q. You knew it was dangerous to stand close to a strongback while a man was holding it after you had taken the wire off, didn't you? A. I was out of danger."

All of the conditions were open and obvious. They were common to the work which was being performed in the ordinary way, and all of the danger to which he was exposed was fully appreciated by him. Years of experience made him familar with the entire operation which he was watching as it progressed. The danger being open and plain, and necessarily incident to the work, he must be held to have assumed the risk of it.

Reversed, and remanded with directions to the trial court to set aside the judgment and grant appellant's motion for judgment notwithstanding the verdict.

MAIN, PARKER, TOLMAN, and ASKREN, JJ., concur.

HOLCOMB, J., concurs in the result.

FRENCH, J. (dissenting)—While it is true that that part of the Act of Congress, (41 Stat. at Large, §§ 988 to 1007) applicable to this case reserves to the employer the defense of the assumption of risk, yet certainly it ought not to be held that the respondent in this case assumed the risk of the negligence of a fellow servant. The negligence complained of was the dropping of the strongback in the immediate proximity of the respondent, so that he was injured thereby. As I read the record in this case, strongbacks are never dropped when any person is standing near, and it is apparent that, had the fellow servant lowered the strongback to the deck instead of dropping it, no in-

jury could have occurred. This, I think, made a question of fact for the jury. It seems to me that the logic of the latter part of the majority opinion is to hold that respondent assumed the risk of the negligence of a fellow servant. To so hold is, I believe, to deny respondent the benefits conferred upon him by the Act in question.

I therefore dissent.

FULLERTON, C. J., and BEALS, J., concur with FRENCH, J.